**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INTELLECTUAL VENTURES I, LLC; INTELLECTUAL VENTURES II, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LENOVO GROUP LTD., LENOVO (UNITED STATES) INC., LENOVOEMC PRODUCTS USA, LLC, AND EMC CORPORATION,<br><br>Defendants | Case No. 1:16-cv-10860-IT<br><br>**LEAD CASE**<br><br>Member Cases:<br>1:16-cv-10868-IT |

**Plaintiffs' Opposition to Defendants' Motion to Stay Pending *Inter Partes* Review**

**Table of Contents**


**Page**

I. FACTUAL BACKGROUND ... 1

II. LEGAL STANDARD ... 2

III. ARGUMENT ... 4

A. A stay at this stage is premature, because none of the Defendants' IPRs have been instituted ... 4

B. The factors guiding the Court's discretion weigh against a stay ... 6

1. Discovery has begun, and any lack of progress is of Defendants' own making ... 6

2. Simplification of issues is speculative because Defendants have not agreed to be bound by the full estoppel provision of § 315(e) and many issues cannot be addressed by IPRs ... 7

3. A stay would prejudice IV ... 10

a. A stay denies IV timely enforcement of its rights in its chosen forum. ... 10

b. Defendants waited nearly seven months to file many of these IPR petitions. ... 12

IV. CONCLUSION ... 14

**Table of Authorities**

**Page**

**Cases**

*ACQIS, LLC, v. EMC Corp.*,
109 F. Supp 3d 352 (D. Mass 2015) .......... 5, 11

*Asetek Holdings, Inc. v. Cooler Master Co.*,
No. 13-CV-00457-JST, 2014 WL 1350813 (N.D. Cal. Apr. 3, 2014) .......... 13

*Athenahealth Inc. v. Carecloud Corp.*,
N. 13-CV-10794-IT, 2014 WL 3566068 (D. Mass. July 17, 2014) .......... 5, 9

*Audatex N. Am. Inc. v. Mitchell Int'l Inc.*,
46 F. Supp. 3d 1019 (S.D. Cal. 2014) .......... 4

*Avago Techs. v. IPtronics Inc.*,
No. 10-CV-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) .......... 12

*Bose Corp. v. SDI Techs., Inc.*,
No. 13-cv-10277- WGY, D.I. No. 35 (D. Mass. June 13, 2013) .......... 4

*CardioNet, LLC v. InfoBionic, Inc.*,
No. 1:15-cv-11803-IT, D.I 50 (D. Mass. Nov. 20, 2015) .......... 3, 4

*Comcast Cable Comms. Corp. v. Finisar Corp.*,
2007 U.S. Dist. LEXIS 103309 (N.D. Cal. Apr. 5, 2007). .......... 3

*Cooper Notification, Inc.* v. *Twitter, Inc.*,
No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) .......... 12

*Cronos Techs., LLC v. Expedia, Inc.*,
No. CV 13-1538-LPS, 2016 WL 1089752 (D. Del. Mar. 21, 2016) .. 12

*Ethicon, Inc. v. Quigg*
849 F.2d 1422 (Fed. Cir.1988) .......... 2

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) .......... 3

*Intellectual Ventures II LLC v. JPMorgan Chase & Co.*,
781 F.3d 1372 (Fed. Cir. 2015) .......... 4, 8

*Koninklijke Philips N.V. v. Amerlux, LLC*,
No. 15-cv-13086-LTS, D.I. 42 (D. Mass. Mar. 10, 2016) .......... 3

*Light Transformation Techs., LLC v. Light Sci. Grp. Corp.*,
No. 2:12-CV-826-MHS-RSP, 2014 WL 11514322 (E.D. Tex. Mar. 28, 2014) .......... 10

*Overland Storage, Inc. v. BTD AG,* No. 10-CV-1700 JLS,
2013 WL 12066130 (S.D. Cal. Dec. 10, 2013) .......... 11

*Personal Audio, LLC v. Togi Entertainment, Inc.*,
Case No. 13-cv-00013, Dkt. No. 235 (E.D. Tex. Aug. 1, 2014) .......... 8

**Table of Authorities**

**Page**

*Realtime Data LLC d/b/a/ IXO v. Actian Corp. et al.*,
No. 6:15-CV-463-RWS-JDL, Doc No. 426 (E.E. Tex. Nov. 29, 2016)....................11

*Trover Grp., Inc. v. Dedicated Micros USA*,
No. 2:13-CV-1047-WCB, 2015 WL 1069179 (E.D. Tex. Mar. 11, 2015)....................4, 11

*TruePosition, Inc. v. Polaris Wireless, Inc.*,
No. 12–646–RGA/MPT, 2013 U.S. Dist. LEXIS 150764 (D. Del. Oct. 21, 2013)....................12

*Trustees of Boston Univ. v. Everlight Elecs. Co. Ltd.*,
No. 12-cv-11935-FDS, D.I. 104 (D. Mass. July 11, 2013) ..........2, 3, 4

*Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*,
2014 WL 4494479 (E.D. Tex. Jan. 14, 2014) ....................11

*Universal Elecs., Inc. v. Universal Remote Control, Inc., 943 F.*
Supp. 2d 1028, 1035 (C.D. Cal. 2013) ,....................11

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
No. C 12–05501 SI, 2015 U.S. Dist. LEXIS 4025 (N.D. Cal. Jan. 13, 2014)....................3

*Xilidev, Inc. v. Boku, Inc.*,
No. 13-CV-2793-DMS, 2014 WL 3353256 (S.D. Cal. July 1, 2014)..4

**Statutes**

35 U.S.C § 315(e)(2)....................8

35 U.S.C. § 316(e) ....................12

35 U.S.C. § 101....................10

35 U.S.C. § 112....................10

35 U.S.C. § 102 ....................10

35 U.S.C. § 103....................9

**Other Authorities**

Leahy–Smith America Invents Act,
PL 112-29, September 16, 2011, 125 Stat 284,....................4

Defendants' motion to stay these cases pending *inter partes* review ("IPR") should be denied because most of the IPR petitions against the patents-in-suit have not been instituted. Indeed, many were filed on the day before, or several days after, Defendants' stay motion. The single IPR that has been instituted does not cover all of the claims asserted in this litigation. Because the weight of authority counsels against a stay under these circumstances, Plaintiffs Intellectual Ventures I, LLC and Intellectual Ventures II, LLC (collectively, "IV" of "Plaintiff") respectfully request that the Court deny Defendants' motion.

## I. FACTUAL BACKGROUND

Most of the IPRs against the patents-in-suit were filed before the Patent Trial and Appeal Board ("PTAB") within the last two months. Three were filed the day before Defendants' motion, and two more were several days afterward.

- All of the Defendants filed IPRs on U.S. Patent No. 8,275,827 ("'827 Patent") on December 13, 2016 and December 22, 2016. PTAB has not instituted either petition.
- Non-party Unified Patents filed an IPR against some but not all of the litigation claims of U.S. Patent No. 6,968,459 ('459 Patent) on July 11, 2016. IV responded to the petition on October 19, 2016. NetApp filed an IPR against the remaining litigation claims December 13, 2016. PTAB has not instituted either petition.
- Non-party Unified Patents filed an IPR on U.S. Patent No. 6,775,745 ("'745 Patent") on August 19, 2016. None of the Defendants have either filed or joined this petition, which PTAB has not instituted.
- NetApp filed an IPR on U.S. Patent No. 6,633,945 ("'945 Patent") on November 18, 2016. PTAB has not instituted the petition.
- Lenovo filed an IPR against U.S. Patent No. 8,387,132 ("'132 Patent") on December 16, 2016. PTAB has not instituted the petition.

- EMC filed an IPR on U.S. Patent No. 9,098,685 ("'685 Patent") on December 9, 2016. PTAB has not instituted the petition
- EMC filed an IPR against some but not all of the asserted claims of U.S. Patent No. 6,516,442 ("'442 Patent") on May 27, 2016. It was instituted on November 30, 2016. NetApp and Lenovo filed an IPR against the remaining asserted claims of the '442 Patent on December 13, 2016, which has not been instituted.

The procedural posture of the various IPRs is represented in the table below.

| Patent No. | IPR | Petitioner | Date Filed | Instituted? |
|---|---|---|---|---|
| **6968459** | IPR2016-01404 | Unified Patents | 7/11/16 | No |
| | IPR2017-00467 | NetApp | 12/13/16 | No |
| **8275827** | IPR2017-00374<br>IPR2017-00439 | All Defendants | 12/13/16<br>12/23/16 | No |
| **6775745** | IPR2016-01643 | Unified Patents | 8/19/16 | No |
| **6633945** | IPR2017-00276 | NetApp | 11/18/16 | No |
| **8387132** | IPR2017-00477 | Lenovo (U.S.) | 12/16/16 | No |
| **9098685** | IPR2017-00338 | EMC | 12/9/16 | No |
| **6516442** | IPR2016-01106 | EMC | 5/27/16 | 11/30/16 |
| | IPR2017-00416 | NetApp, Lenovo | 12/13/16 | No |

## II. LEGAL STANDARD

The court has inherent discretionary power to stay an action as a matter of case management. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir.1988); *Trustees of Boston Univ. v. Everlight Elecs. Co. Ltd.*, No. 12-cv-11935-FDS, D.I. 104 at 2 (D. Mass. July 11, 2013). In determining whether to stay, the court considers

(1) whether discovery is complete and whether a trial date has been set, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Id.* at 2-3; *see also Koninklijke Philips N.V. v. Amerlux, LLC*, No. 15-cv-13086-LTS, D.I. 42 at 7 (D. Mass. Mar. 10, 2016). Courts in this District and various other districts have held, however, that it is premature to even consider these factors if the IPR has not yet been instituted. *See, e.g., Trustees of Boston Univ.*, D.I. 104 at 3; *CardioNet, LLC v. InfoBionic, Inc.*, No. 1:15-cv-11803-IT, D.I 50 at 4 (D. Mass. Nov. 20, 2015) (Talwani, J.) ("The Patent Trial and Appeal Board has not yet decided whether to institute inter-partes review and may not do so for several months.").

"There is no per se rule that patent cases should be stayed pending reexamination, because such a rule 'would invite parties to unilaterally derail' litigation." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12–05501 SI, 2015 U.S. Dist. LEXIS 4025, at *4 (N.D. Cal. Jan. 13, 2014). If such a stay was "routinely available to delay the judicial resolution of disputes, the procedure is subject to inequity, if not manipulation and abuse, through the delays that are inherent in PTO activity." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1305 (Fed. Cir. 2009) (Newman J., concurring).

"If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts." *Comcast Cable Comms. Corp. v. Finisar Corp.,* No. C 06-04206 WHA, 2007 U.S. Dist. LEXIS 103309, at *4-5 (N.D. Cal. Apr. 5, 2007). "Federal court calendars should not be hijacked in this manner." *Id.*

## III. ARGUMENT

### A. A stay at this stage is premature, because none of the Defendants' IPRs have been instituted

Only one of Defendants' petitions has been instituted, and it does not cover all of the claims asserted in this litigation. Of the remaining petitions, several were filed by third parties. The first decision regarding institution of Defendants' open petitions is at least four months away, and the rest are up to six months away. As such, the petitions standing alone do not warrant a stay. Courts in this District and across the country have recognized that staying cases in the face of IPRs not yet instituted is premature.[1] Recently, the Federal Circuit has weighed in, ruling with respect to the another post-grant review process (Covered Business Method review or "CBMR") that it could not review denial of a pre-institution stay as prescribed under the Patent statute because there is no "proceeding" warranting a stay until ***after*** the petition is instituted. *See Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372, 1377 (Fed. Cir. 2015) (emphasis added).[2] Defendants have identified

---

[1] *See, e.g., Trustees of Boston Univ.*, D.I. 104 at 2 ("Here, however, it is not yet even established that a re-examination of the '738 patent will be undertaken by the PTO. Therefore, it would be premature for the Court to analyze this *potential* reexamination as cause for a stay under the factors set forth above."); *CardioNet*, D.I 50 at 4 ("However, Defendant's petitions seeking inter-partes review were only submitted in August 2015. The Patent Trial and Appeal Board has not yet decided whether to institute inter-partes review and may not do so for several months."); *Bose Corp. v. SDI Techs., Inc.*, No. 13-cv-10277- WGY, D.I. No. 35 (D. Mass. June 13, 2013); *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *6 (E.D. Tex. Mar. 11, 2015) (J. Bryson, sitting by designation, noting that it is the district's "universal practice" that "when the PTAB has not yet acted on a petition for inter partes review, the courts have uniformly denied motions for a stay"); *Audatex N. Am. Inc. v. Mitchell Int'l Inc.,* 46 F. Supp. 3d 1019, 1023–24 (S.D. Cal. 2014) ("It is unclear whether review will be instituted, and any review is of uncertain scope. Until the PTAB issues its decision on whether to institute review, this Court can only speculate about whether or not a stay would simplify the issues. As such, this factor weighs against imposition of a stay."); *Xilidev, Inc. v. Boku, Inc.,* No. 13-CV-2793-DMS, 2014 WL 3353256, at *1 (S.D. Cal. July 1, 2014) (same); *In re Ameranth Patent Litig. Cases,* No. 11-cv-1810-DMS, 2013 WL 7144380, at *1 (S.D. Cal. Nov. 26, 2013) (same).

[2] While there are no statutory guidelines for granting stays pending IPR proceedings as there is for CBMR proceedings, Leahy–Smith America Invents Act, PL 112-29, September 16, 2011, 125 Stat 284, the Federal Circuit's logic is still instructive in determining whether pre-institution stays are warranted in IPR proceedings.

a handful cases that go against this broad consensus. This does not support their motion, particularly since many of the opinions they rely upon are distinguishable from the facts presented here, or were rendered without the benefit of the Federal Circuit's guidance in *JPMorgan*.

For example, in *ACQIS, LLC, v. EMC Corp.*, two IPRs had been instituted on claims that were broadly representative of all of the other claims whose validity had not been challenged via IPR. 109 F.Supp 3d 352 (D. Mass 2015). As Defendants themselves acknowledge, that is not the situation here, where "only two of the patents are related to each other and the patents address many different aspects of computer technology." Br. at 10.

Nearly every other opinion that Defendants cite in support of their pre-institution stay request is also pre-*JPMorgan*. For example, in *Athenahealth Inc. v. Carecloud Corp.*, the Court granted a partial pre-institution stay pending resolution of CBMR, but did so prior to the Federal Circuit's contrary decision in *JPMorgan*. No. 13-CV-10794-IT, 2014 WL 3566068, at *1 (D. Mass. July 17, 2014); *JPMorgan*, 781 F.3d at 1377. As the Federal Circuit indicated in *JPMorgan*, there is no "proceeding" that justifies imposition of a stay until the petition requesting the proceeding instituted by the PTAB. *See id.* (refusing to assert interlocutory jurisdiction over denial of a stay when no CBMR proceeding had been instituted in the PTAB). Moreover, *AthenaHealth* was stayed only in part – claim construction was allowed to proceed - because the Court recognized that "there is also an interest in moving this case forward, particularly with regard to those aspects presenting a lesser burden on the Parties and the court," and that "[w]ithout knowing whether the Patent Board will grant review, and, if it does, whether the review will encompass any of the claims at issue in this case, the court is not yet able to determine whether the stay will simplify the issues." No. 13-CV-10794-IT, 2014 WL 3566068, at *3 (D. Mass. July 17, 2014).

### B. The factors guiding the Court's discretion weigh against a stay

#### 1. Discovery has begun, and any lack of progress is of Defendants' own making

The first factor weighs against a stay. These cases were filed in early to mid May of 2016 — over seven months ago. The Court entered a schedule on October 5, 2016 (D.I. 43)[3] setting timetables for, among other things, preliminary infringement and invalidity disclosures, claim construction disclosures, and discovery. IV filed preliminary infringement disclosures on September 2, 2016 (D.I. 41) and the Defendants filed preliminary non-infringement and invalidity disclosures on December 16, 2016 (D.I. 74).

Little additional discovery has occurred, but this inaction is largely attributable to Defendants' own conduct. For example, Defendants first proposed, then reneged on a plan to file a stipulated phased discovery plan, which the parties finalized on November 8, 2016 in accordance with L.R. 16.1 and the Court's recommendation.[4] After several follow-up discussions, Defendants took the new, inconsistent, position that their pending motion to stay should act as a unilateral stay upon discovery, thereby stalling progress of the case in their favor.[5] Further, Defendants sought unreasonably broad and burdensome restrictions in a protective order ostensibly designed to streamline discovery. While the Court rejected those restrictions, protracted negotiations and motion practice surrounding these issues further delayed discovery progress. *See, e.g.*, D.I. 52, 55, 63. Defendants should not be allowed to profit from these delaying tactics through grant of a stay.

---

[3] Because the cases have been consolidated (D.I. 79), all citation to docket items in this brief refer to the low-numbered case, 1:16-cv-10860-IT.

[4] The parties agreed to a phased discovery proposal on November 8, 2016, which Defendants promised to get on file. *See* Ex. 1. For unexplained reasons they failed to do so, and confirmed this on December 12, 2016. *See* Ex. 2.

[5] IV agreed to extend the proposed deadline in the discovery plan by a month, but Defendants refused to file the revised discovery plan, contending that they did not believe the new deadline "makes sense in view of the pending motion to stay." *See* Ex. 3.

**2. Simplification of issues is speculative because most of the IPRs have not been instituted, Defendants have not agreed to be bound by the full estoppel provision of § 315(e), and many issues cannot be addressed by IPRs**

The second factor weighs against a stay because PTAB has not even agreed to adjudicate any of the Defendants' invalidity challenges. Most of the Defendants' petitions were filed only a day before, or several days after, bringing this motion to stay. As Defendants concede in their motion, institution decisions on their petitions are at least 4-6 months away. Br. at 6. Nonetheless, Defendants rely upon generic statistics to suggest that institution is a foregone conclusion, and that cancellation of "most of the claims" is likely. Br. at 3, 12. This confidence belies the case-specific nature of the PTAB's institution decisions, the increasingly likely probability that some or all of the petitions will be denied, and the growing tendency of the PTAB to uphold rather than cancel claims.[6]

As of now, the only petition that has been instituted does not cover all of the claims at issue. Hence, even if the PTAB cancels all of the challenged claims, it will not eliminate even a single patent from the case. Further, Defendants' insistence that any PTAB opinion, regardless of whether it institutes or rejects a petition, will "provide guidance on claim scope" is a red herring. Br. at 13. Defendants themselves refuse to be bound by PTAB claim construction positions because, as they note in their contentions, a "different claim construction standard applies in district court" than in the PTAB. *See, e.g.,* D.I. 75 at 5, n. 1.

Defendants also have not offered to be bound by any petitions they themselves have not filed, a position that is inconsistent with their overarching view that IPR

[6] Ex. 4 (documenting a decline in rates of IPR institution from 74% in 2014 to 66% in 2016. Updated data from the USPTO for 2016 shows that as of October, 2016, the institution rate was 64%); Ex. 5 (documenting, using USPTO statistics, a decline in institution rates from 87% in 2012 to 66% as of May, 2016). *Compare, e.g.,* Ex. 6 at 9 (showing that as of January 31, 2016, of 792 completed trials, 221 (28%) resulted in some or all claims being held patentable) *with* Ex. 7 at 10 (showing that of the 1261 trials completed as of October of 2016, 402 (32%) resulted in some or all claims being held patentable);

decisions will simplify the case. *See, e.g., Amerlux*, No. 15-cv-13086-LTS, D.I. 42 at 7 ("More persuasive is the fact that Amerlux is not a party to the IPR, and it has not offered to be bound by the estoppel attendant to IPR proceedings."); 35 U.S.C. § 315(e)(2). 35 U.S.C. § 315(e)(2) bars re-litigation of invalidity arguments "that the petitioner raised *or reasonably could have raised*" during the inter partes review. But in this litigation, some of the petitions were filed by non-parties, and in the case of the '745 Patent in particular, none of the Defendants have either filed or joined the third-party IPR. For each of the other patents except the '827 Patent, every Defendant has taken an individualized approach to filing IPRs, thereby leaving an opening for another Defendant to re-litigate invalidity issues that are not resolved to the satisfaction of the first wave of petitioners. For example, in the case of the '459 Patent, Defendants Lenovo and EMC have not agreed to be bound by the petitions already filed by Unified Patents or Defendant NetApp. "The absence of a full statutory estoppel not only increases the ability of litigants to 'game the system' and devise an unfair second bite at the apple, it also has the potential to increase rather than reduce the complexity of the validity issues that may come before the Court." *Intellectual Ventures II LLC v. Kemper Corp.*, No. 16-cv-0081, Dkt. No. 57 (E.D. Tex. Nov. 7, 2016); *see also Personal Audio, LLC v. Togi Entertainment, Inc.*, No. 13-cv-00013, Dkt. No. 235 (E.D. Tex. Aug. 1, 2014) (holding that anything short of a full estoppel under § 315(e) is "illusory").

Defendants have complained that the burdens of claim construction are likely to fall around the same time as the institution decisions on some of their petitions. Br. at 12. However, Defendants have not explained what might cause the claim construction work that occurs in this Court to be "entirely redone" in light of any PTAB decisions. Br. at 12. While the PTAB may offer its perspective as to claim scope, none of its claim construction pronouncements are binding upon this Court because, as Defendants have noted, the PTAB's claim construction standards are different. To the extent any of the parties wish to incorporate material from the

PTAB's institution decisions into the briefing, it will be relatively easy to do so via supplementation to the briefing and disclosures, particularly given that the PTAB opinions may arrive before the claim construction hearing set for June 28, 2017. Indeed, this Court has noted that claim construction briefing presents a "lesser burden" upon the parties, and is generally not subject to being stayed, particularly where the PTAB petitions at issue have not even been instituted. *Athenahealth, Inc.*, 2014 WL 3566068, at *3.

Moreover, even if the PTAB institutes Defendants' petitions, that tribunal can never resolve a large number of issues already before this Court. Since IPRs are limited to adjudicating invalidity challenges posed by printed publications under 35 U.S.C. §§ 102 and 103,[7] the PTAB ***cannot*** address invalidity questions raised by the numerous alleged prior art systems Defendants have identified in their preliminary invalidity disclosures,[8] or resolve the 35 U.S.C. § 112 issues Defendants have raised. *See, e.g.,* D.I. 75 at 36-41; D.I. 76 at 42-43, 64, 92-93, 109-111. Furthermore, Defendants' contentions rely upon many printed publications that are not even discussed in the IPRs.[9] And even for validity questions raised by printed publications that have been presented to the PTAB, "the reality [is] that there is no guarantee that *inter partes* proceedings will simplify a case—only the possibility that they might." *Light Transformation Techs., LLC v. Light Sci. Grp. Corp.*, No. 2:12-CV-826-MHS-

[7] 35 U.S.C. § 311(b).

[8] *See generally, e.g.,* D.I. 75. Lenovo defendants, for example, contend that IBM's ESCON and FICON systems, SGI Origin 200/2000, and Tandem's NonStop Computer Systems each anticipate the '442 Patent. Lenovo defendants contend that the UNIX OS anticipates the '745 Patent, and that the '459 Patent is anticipated by Oracle's Sun Ray system, and Imation's LS-120 SuperDisk 300. They also contend that the '827 Patent is anticipated by MangoSoft Medley, Digital Equipment Corporation's Petal system, and IBM's Tiger Shark and Global Parallel File Systems.

[9] For example, in challenging the validity of the '442 Patent, Lenovo cites to Dunning (U.S. Patent No. 6,683,850), Drottar (U.S. Patent No. 6,170,025), Baxter I and II (U.S. Patent Nos. 6,026,461 and 5,887,146 respectively), Huppenthal (U.S. Patent No. 6,026,459), Manning (U.S. Patent No. 5,870,538 ), Lentz (U.S. Patent No. 5,440,752), Baum (U.S. Patent No. 5,166,674), Nishtoya (U.S. Patent No. 5,363,484), WO 92/07335, Nakamikawa ("High Performance Fault Tolerant Computer and its Fault Recovery"), and Siewiorek ("Fault Tolerance in Commercial Computers"). None of these references appears in the IPR petitions challenging this patent.

RSP, 2014 WL 11514322, at *3 (E.D. Tex. Mar. 28, 2014). That is particularly true here, where for reasons discussed earlier, it is unlikely that any, let alone all, of the Defendants' recently filed petitions will be instituted. Finally, the threshold question of whether the '827 and '685 Patents claim eligible subject matter has been fully briefed in this litigation, and cannot be answered by the PTAB. D.I. 47-51, 57-58, 68-69, 72. As such, this litigation is the ***only*** forum that can resolve all the issues between IV and Defendants—including validity in light of prior art systems, validity under 35 U.S.C. §§ 101 and 112, Defendants' infringement, and damages. Hence, the Court should move forward with resolving all the parties' issues instead of waiting for the possibility that the PTAB might institute Defendants' recently-filed petitions, and thereby resolve a small subset of issues concerning validity.

### 3. A stay would prejudice IV

The third factor, prejudice or tactical advantage, weighs against a stay. Defendants' delay in filing their IPR petitions—together with their request to stay the case before any of those petitions have even been instituted—inflicts a tactical disadvantage upon IV.

#### a. A stay denies IV timely enforcement of its rights in its chosen forum.

A stay prevents IV's timely enforcement of its patent rights. As explained earlier, the PTAB institution decisions on the Defendants' petitions are due no earlier than April 2017, and as late as June 2017. If any are instituted, the review process could take another 12 to 18 months to reach final determination,[10] and any appeal of those determinations would take another year or more. Postponing this litigation, at IV's prejudice, prevents the just and speedy resolution of parties' rights, as this case is likely to finish before questions concerning the IPRs are fully adjudicated by the PTAB. Hence, the prejudice factor weighs against a stay, particularly given

[10] 35 U.S.C. 316(a)(11).

Defendants' delay in filing their IPRs.[11]

The fact that IV does not compete with Defendants does not eliminate prejudice to IV. This district has recognized that even non-competitive, non-practicing entities have an interest in timely enforcement of their patent rights,[12] a view generally accepted by Courts all over the country.[13] For example, in *ACQIS*, this Court denied EMC's request for a stay pending appellate review of IPRs, noting that "[e]ven though ACQIS is a non-practicing entity that does not compete directly with EMC, the Court is concerned that an additional, indefinite stay, which could potentially last well in excess of a year, would prejudice ACQIS in this litigation as well as its business generally[.]" Civil Action No. 14-cv-13560, D.I. 140 at 5. Similarly, in *Realtime Data LLC d/b/a/ IXO v. Actian Corp. et al.*, the Eastern District of Texas noted that "the fact that Realtime is a non-practicing entity and is merely pursuing monetary damages would not preclude Realtime from experiencing prejudice if the Court granted Defendants' motion to stay." No. 6:15-CV-463-RWS-JDL, Doc. No. 426 at 5-6 (E.D. Tex. Nov. 29, 2016). "Although courts have recognized that non-practicing entities may be less prejudiced by a stay than a marketplace competitor, Realtime still has an interest in timely enforcement of its patent rights." *Id.* at 6 (finding prejudice and denying stay). Likewise, in *Cronos*

[11] *See, e.g., Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1035 (C.D. Cal. 2013) ("The Court is concerned that allowing the progress of its docket to depend on the status of proceedings elsewhere can interfere with its obligation 'to secure the just, speedy, and inexpensive determination of every action' . . . . This consideration weighs against a stay."); *Overland Storage, Inc. v. BTD AG,* No. 10-CV-1700 JLS, 2013 WL 12066130, at *2 (S.D. Cal. Dec. 10, 2013) ("The Federal Circuit recognizes the existence of a 'strong public policy favoring expeditious resolutions of litigation.'") (denying stay).

[12] *See, e.g., ACQIS, LLC v. EMC Corp.*, Civil Action No. 14-cv-13560, D.I. 140 at 5 (D. Mass. August 8, 2016).

[13] *See, e.g., Trover Grp., Inc. v. Dedicated Micros USA,* No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *2 (E.D. Tex. Mar. 11, 2015 ("the plaintiffs' claim of prejudice is entitled to consideration, as is the general right of patent owners to timely enforcement of their patent rights"); *Unifi Scientific Batteries, LLC v. Sony Mobile Commc'ns AB*, No. 6:12-cv-224 JDL (lead case), 2014 WL 4494479, at *2 (E.D. Tex. Jan. 14, 2014) ("SB has a recognized interest in the timely enforcement of its patent rights.").

*Techs., LLC v. Expedia, Inc.*, wherein plaintiff was a non-practicing entity, the Delaware court denied the stay, recognizing that the delay "may result in some inherent prejudice to the plaintiff." No. CV 13-1538-LPS, 2016 WL 1089752, at *1-2 (D. Del. Mar. 21, 2016).

Finally, a stay unfairly prejudices IV by depriving it of its chosen forum—this Court—for litigating validity challenges. Defendants presumably believe that validity challenges before the PTAB are more favorable to infringers. This is because the burden of establishing invalidity is lower. And because the PTAB cannot address all validity issues, or any issues of infringement or damages, the PTAB provides accused infringers with a low-risk forum to challenge a patent's validity. Thus, forcing IV to litigate validity exclusively before the PTAB would provide Defendants "with a clear and unwarranted tactical advantage."[14]

**b. Defendants waited nearly seven months to file many of these IPR petitions.**

"The more diligent a party is in seeking *inter parties* review, the less likely its petition is prejudicial to the non-movant." *TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12–646–RGA/MPT, 2013 U.S. Dist. LEXIS 150764, at *18 (D. Del. Oct. 21, 2013). "Filings for IPR made well after the initiation of litigation, however, may suggest an unfair tactical advantage or dilatory motive." *Id.*; *see also Avago Techs. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *4 (N.D. Cal. July 28, 2011) ("The later in the litigation that the reexamination request is made, the

[14] *Cooper Notification, Inc.* v. *Twitter, Inc.*, No. 09-865-LPS, 2010 U.S. Dist. LEXIS 131385, *12 (D. Del. Dec. 13, 2010) ("Staying this litigation in favor of the PTO proceeding would grant Defendants their choice of forum . . . for no good reason"); *SoftView LLC v. Apple et al.*, No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677, at *13 (D. Del. July 26, 2012) (a stay "would provide Apple with its choice of forum without any compelling justification for doing so."); *Clouding IP LLC v. SAP AG, et al.*, No. 13-01456-LPS, D.I. 35 (D. Del. Jan. 21, 2014) ("a stay of this one case will unfairly prejudice Plaintiff by depriving it of its chosen forum"); *Allure Energy*, 2015 WL 11110606, at *1 ("a stay would likely require Plaintiff to expend considerable financial resources on the IPR proceedings, prior to its day in court.").

more likely it is to represent a tactical move for delay.")

Here, Defendants submitted many of their IPR petitions months after these cases were filed. IV served the original complaint on May 10, 2015, and the Court issued a full scheduling order on October 5, 2016. (D.I. 43). Yet Defendants waited until as late as December—over seven months after the complaint—to file most of their IPR petitions. Because of that delay, the IPR institution decisions may not come until mid-2017.

Defendants have created additional prejudice through their deliberate efforts to delay the progress of the case. As discussed earlier, Defendants have resisted entry of a joint discovery plan they themselves proposed, and engaged in protracted negotiations and motion practice over the protective order. Further, EMC sought delays of nearly four months in response to IV's amending its complaint to add additional infringement allegations – allegations which EMC had been aware of as early as August 26, 2016, and through IV's September 2, 2016 infringement contentions.[15]

Given this timing and Defendants' dilatory tactics, IV faces the disadvantage of having the case stayed months before PTAB even decides whether the petitions should be instituted. Defendants learned in May of 2016 that the patents-in-suit were being asserted against them, and they knew that the PTAB's institution decision could take six months. Thus, Defendants should have prepared IPRs immediately and filed them "as soon as possible." *See, e.g., Asetek Holdings, Inc. v. Cooler Master Co.*, No. 13-CV-00457-JST, 2014 WL 1350813, at *5 (N.D. Cal. Apr. 3, 2014) ("Because of the delay that may accrue by virtue of the PTO instituting an IPR trial on a patent-in-suit, this Court expects accused infringers to evaluate whether to file, and then to file, IPR petitions as soon as possible after learning that a patent may be asserted against them."). Instead, Defendants delayed between 5-7 months. This lengthy delay was unjustified.

[15] *See, e.g.,* Exs. 8-10.

*Realtime Data* is instructive on this point. There, defendants filed four IPR petitions against two asserted patents just short of the one-year deadline. No. 6:15-CV-463-RWS-JDL, Doc. No. 426 at 5 (E.D. Tex. Nov. 29, 2016). The Court found that "the timing of the IPR petitions here shows that Defendants did not act with sufficient dispatch." *Id.* (denying stay). Likewise, the Defendants here were insufficiently diligent in delaying up to 7 months before filing their petitions. Defendants' excessive delay unfairly prejudices IV. If Defendants had filed their IPR petitions sooner, decisions would arrive well before claim construction disclosures would even begin.

## IV. CONCLUSION

Defendants filed a flurry of IPR petitions nearly seven months after these lawsuits were filed while delaying discovery progress in the lead-up to their stay motion. Such conduct should not be rewarded. To grant such a stay would encourage defendants to wait until the last possible moment to petition for a proceeding, knowing they could obtain a stay regardless of whether the proceeding is ultimately instituted. IV respectfully asks the Court to deny Defendants' stay motion.

DATED: January 10, 2017 By: */s/ Brian Ledahl*

Brian Ledahl (CA SB No. 186579)
Arka Chatterjee (CA SBN 268546)

RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991
bledahl@raklaw.com
achatterjee@raklaw.com

*Attorneys for Plaintiffs Intellectual Ventures I, LLC and Intellectual Ventures II, LLC.*

**Certificate of Service**

I certify that counsel of record is being served on January 10, 2016, with a copy of this document via ECF.

*/s/ Brian Ledahl*