**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | |
|---|---|
| INTELLECTUAL VENTURES I, LLC and INTELLECTUAL VENTURES II, LLC, | Case No. 1:16-cv-010860-PBS |
| *Plaintiffs*, | |
| v. | |
| LENOVO GROUP LTD., LENOVO (UNITED STATES) INC., LENOVOEMC PRODUCTS USA, LLC, and EMC CORP., | |
| *Defendants*. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT EMC CORPORATION'S MOTION
FOR SUMMARY JUDGMENT OF INVALIDITY OF CLAIM 11 OF THE '442 PATENT**

# TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................................... 1

II.  STATEMENT OF FACTS ...................................................................................... 2

    A.   Procedural History................................................................................... 2

    B.   The Patented Invention .......................................................................... 3

III. LEGAL STANDARDS ........................................................................................... 4

IV.  ARGUMENT............................................................................................................ 4

    A.   Collateral Estoppel Does Not Apply..................................................... 5

        1.   Under 35 U.S.C. § 282, Each Claim Must Be
            Evaluated Independently............................................................. 5

        2.   The PTAB's Lower Standard of Proof Makes Collateral
            Estoppel Inapplicable  Here ....................................................... 6

        3.   The PTAB Applies a Broader Claim Construction Standard ..................... 9

        4.   The Cases EMC Cites Do Not Require This Court to
            Apply Collateral Estoppel....................................................... 10

    B.   EMC Failed to Present Evidence that Claim 11 Is Invalid ............................ 11

    C.   Disputed Material Facts Preclude Summary Judgment ................................ 12

V.   CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
  725 F.2d 1350 (Fed. Cir. 1984) ................................................................................. 4

*Ambit Corp. v. Delta Airlines, Inc.*,
  707 F. Supp. 2d 74 (D. Mass. 2010) ......................................................................... 12

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*,
  229 F.3d 1120 (Fed. Cir. 2000) ............................................................................... 15

*Cobb v. Pozzi*,
  363 F.3d 89 (2d Cir. 2004) ..................................................................................... 7, 9

*Cuozzo Speed Techs., LLC v. Lee*,
  136 S. Ct. 2131 (2016) ............................................................................................. 9

*Ex Parte Ditzik*,
  14/169,232, 2018 WL 3409672 (P.T.A.B. July 10, 2018) ......................................... 8

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  582 F.3d 1288 (Fed. Cir. 2009) ................................................................................. 8

*Graham v. John Deere Co.*,
  383 US 1 (1966) ..................................................................................................... 12

*In re Baxter Int'l, Inc.*,
  678 F.3d 1357 (Fed. Cir. 2012) ............................................................................. 7, 8

*Jet, Inc. v. Sewage Aeration Sys.*,
  223 F.3d 1360 (Fed. Cir. 2000) ................................................................................. 4

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,
  381 F.3d 1142 (Fed. Cir. 2004) ............................................................................... 12

*Kroeger v. U.S. Postal Serv.*,
  865 F.2d 235 (Fed. Cir. 1988) ............................................................................... 4, 9

*Lemelson v. TRW, Inc.*,
  760 F.2d 1254 (Fed. Cir. 1985) ............................................................................. 4, 5

*MaxLinear, Inc. v. CF CRESPE LLC*,
  880 F.3d 1373 (Fed. Cir. 2018) ................................................................................. 5

*Microsoft Corp. v. I4I Ltd. P'ship*,
  564 U.S. 91 (2011) ....................................................................................... 1, 4, 11

*Novartis AG v. Noven Pharm. Inc.*,
  853 F.3d 1289 (Fed. Cir. 2017)............................................................................................ 8

*Novartis Pharm. Corp. v. Watson Labs., Inc.*,
  611 Fed. App'x 988 (Fed. Cir. 2015)..................................................................................... 8

*Ohio Willow Wood Co. v. Alps South, LLC*,
  735 F.3d 1333 (Fed. Cir. 2013)............................................................................................ 10

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)............................................................................................. 9

*Purdue Pharma L.P. v. Mylar Pharm. Inc.*,
  2017 WL 784989 (D. Del. 2017) .......................................................................................... 6

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
  264 F.3d 1344 (Fed. Cir. 2001)............................................................................................. 6

*Soverain Software LLC v. Victoria's Secret Direct Brand Management, LLC*,
  778 F.3d (Fed. Cir. 2015)...................................................................................................... 10

*Stratoflex, Inc. v. Aeroquip Corp.*,
  713 F.2d 1530 (Fed. Cir. 1983)............................................................................................. 14

*United States v. Egan Marine Corp.*,
  843 F.3d 674 (7th Cir. 2016) ................................................................................................ 7

*XY, LLC v. Trans Ova Genetics, L.C.*,
  890 F.3d 1282 (Fed. Cir. 2018)............................................................................................. 10

*ZUP, LLC v. Nash Mfg., Inc.*,
  896 F.3d 1365 (Fed. Cir. 2018)............................................................................................. 12

**Statutes**

35 U.S.C. § 102.................................................................................................................. 2, 3, 11

35 U.S.C. § 103.................................................................................................................... 2, 11

35 U.S.C. § 282(a) .............................................................................................................. i, 1, 5, 6

35 U.S.C. § 316(e) ..................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................................ 4

**Treatises**

18 Charles Alan Wright & Arthur R. Miller,
    *Federal Practice & Procedure* § 4422 (3d ed. 1998) ................................................................ 7

Restatement (Second) of Judgments § 28
    (Am. Law. Inst. 1982) ................................................................................................................ 7

OPPOSITION TO EMC CORPORATION'S MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Defendant EMC Corporation ("EMC") asks the Court to rule that the Patent Trial and Appeal Board's invalidity decision on claim 1 of the '442 patent automatically renders claim 11 of the same patent invalid.   Claim 11, dependent upon claim 1, is statutorily entitled to a presumption of validity, even though dependent upon a claim found invalid by the PTAB.   *See* 35 U.S.C. § 282(a) ("Each claim of a patent . . . shall be presumed valid independently of the validity of other claims; dependent . . . claims shall be presumed valid even though dependent upon an invalid claim").   It is undisputed that the PTAB never addressed claim 11.   Thus, to prove invalidity of claim 11, EMC must present clear and convincing evidence of invalidity.   *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).   That burden cannot be met by reliance upon the PTAB's decision on claim 1—a decision that was rendered by applying a lower burden of proof (preponderance of the evidence) and by utilizing a different claim construction standard, and, thus, cannot have a binding or preclusive effect on this Court's evaluation of claim 11.

EMC claims that collateral estoppel is a "second, independent" basis for summary judgment, but in fact, its entire motion rests on a theory of collateral estoppel: arguing that this Court is estopped from deviating from the PTAB's factual findings regarding claim 1 of the '442 patent.   EMC ignores the statutory mandate that each claim must be evaluated independently, choosing instead to devote large sections of its brief to analyzing claim 1, which is not at issue in this case.   EMC treats claim 11, which depends from claim 1, as essentially identical to claim 1, despite the statutory presumption of patent validity.   EMC repeatedly cites to arguments and evidence presented to the PTAB without ever offering a sufficient explanation as to why the findings of the PTAB regarding claim 1 necessarily and automatically apply to claim 11.   Nor does EMC account in any way for the material procedural differences between *inter partes* review proceedings and civil proceedings in this Court.   Most significantly, the PTAB evaluates challenges to patent validity under a "preponderance of the evidence" standard, a substantially lower standard of proof than the "clear and convincing evidence" standard that EMC must meet in this Court.   Rather than marshaling evidence to satisfy its heavier burden in this Court, EMC

merely submits the findings of the PTAB (under different standards of proof and claim construction) as to the majority of elements at issue in claim 11.

EMC cannot show that it is entitled to judgment as a matter of law because there are disputed issues of material fact about the validity of claim 11. EMC relies entirely on the determination of the PTAB as to claim 1 and on the bare-bones declaration from Dr. Douglas Clark, which merely states—without explanation or support—that the prior art asserted in the IPR proceedings also teaches the elements added by claim 11. Plaintiffs' expert witness, Dr. Richard Wesel, reaches the opposite conclusion, finding that the asserted prior art does *not* teach or suggest the elements of claim 11 and that a POSITA would not find claim 11 obvious in light of the asserted prior art. Given the scant evidence supplied by EMC, Dr. Wesel's declaration alone is enough to demonstrate that there are disputed material issues of fact that preclude summary judgment.

EMC seeks to avoid its burden to show, by clear and convincing evidence, that claim 11 of the '442 patent is invalid. But EMC cannot skip past the fact that it has failed to carry that heavy burden and that it has failed to show there are no disputed issues of fact. Thus, EMC's motion for summary judgment must be denied.

## II.    STATEMENT OF FACTS

### A.    Procedural History

Plaintiffs Intellectual Ventures I, LLC and Intellectual Ventures II, LLC (collectively "IV") filed this action against EMC in May 2016, alleging infringement of U.S. Patent No. 6,516,442 ("the '442 patent"). Subsequently, EMC petitioned the PTAB for *inter partes* review of the '442 patent, challenging twelve separate claims. It did not challenge claim 11. With respect to claim 1 (the only challenge potentially relevant to this motion), EMC based its petition on a single prior art reference, U.S. Patent No. 5,490,250 to Reschke *et al.* ("Reschke"). EMC asserted two separate grounds. It asserted that Reschke anticipated claim 1 under 35 U.S.C. § 102, and separately, EMC asserted that Reschke rendered claim 1 obvious under 35 U.S.C. § 103. Declaration of Brian Ledahl ("Ledahl Decl."), Ex. A (EMC Petition).

The PTAB rejected EMC's argument that Reschke anticipated any claim of the '442 patent at the institution stage, finding that EMC "does not demonstrate a reasonable likelihood of Petitioner prevailing in its challenge to claim 1 under 35 U.S.C. § 102 as anticipated by Reschke." Ledahl Decl., Ex. B at 36 (Institution Decision).  The PTAB instituted review as to ten of the claims EMC challenged and ultimately ruled that those claims were invalid.  The PTAB's decision included a finding that independent claim 1 was obvious in light of Reschke.  As noted previously, claim 11, which depends from claim 1, was not challenged in the IPR proceeding.

Separately, in December 2016, consolidated defendants Lenovo and NetApp filed their own IPR petition challenging claims of the '442 patent, including both claims 1 and 11.  EMC chose not to join their petition, despite the fact that EMC had known since September 2016 that IV contended that EMC infringed claim 11 but had not included that claim in its own IPR petition. The PTAB declined to institute *inter partes* review as to Lenovo and NetApp's petition finding that they had not established even a reasonable likelihood of demonstrating invalidity under the preponderance standard.  Ledahl Decl., Ex. C, at 26 (IPR2017-00416 Institution Decision).

### B.     The Patented Invention

The '442 patent offers a novel solution for the "bottleneck" problem that arises when multiple microprocessors and memories attempt to communicate using a single communication channel as was common in the prior art.[1]  Declaration of Richard Wesel, Ph.D. ("Wesel Decl.") ¶ 31.  Rather than using a single bus to connect multiple microprocessors and memories, the '442 patent teaches the use of a switch fabric configured to switch data packets.  *Id.* ¶ 32. A switch fabric essentially replaces a single switch with a web of connections and switches to allow the processors and memories to communicate with each other without having to use a single bus for all of the communications. *Id.*  In addition, the '442 patent teaches the use of packetized data in connection with the switch fabric.  *Id.* ¶ 33.  A data packet must include at least data and control

---

[1] IV has submitted the Declaration of Dr. Richard D. Wesel in support of its opposition to the motion for summary judgment.  Dr. Wesel's declaration addresses the nature and importance of the '442 patent's inventions more fully than set forth here.

information, such as an address, that allows the switch fabric to route the data packet to its correct destination. *Id*. ¶ 35. In older systems, such as Reschke, data and control information were routed separately, a different means of conveying information. *Id. ¶* 52. The '442 patent further teaches an error correction code that allows the system to flag errors in packetized data, allowing it to quickly identify errors that require retransmission. *Id.* ¶ 39.

## III.   LEGAL STANDARDS

Summary judgment is appropriate only where there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a). "For summary judgment, fact-finding is an inappropriate exercise, at either the appellate or the district court level. If a dispute requiring a finding exists as to any material fact, summary judgment is improper." *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260 (Fed. Cir. 1985).

An accused infringer challenging the validity of an asserted patent must prove its invalidity defense by clear and convincing evidence. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011). "[T]hat burden is constant and never changes." *Id.* (quoting *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984)).

Collateral estoppel can only apply where each of the following four factors is satisfied: "(1) identity of the issues in a prior proceeding; (2) the issues were actually litigated; (3) the determination of the issues was necessary to the resulting judgment; and, (4) the party defending against preclusion had a full and fair opportunity to litigate the issues." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1366 (Fed. Cir. 2000). "Where the requirements are not met, it would be error to apply collateral estoppel; where the requirements are met, it would not be error" to decline to apply collateral estoppel. *Kroeger v. U.S. Postal Serv.*, 865 F.2d 235, 239 (Fed. Cir. 1988).

## IV.   ARGUMENT

EMC's motion must fail because it rests entirely on the flawed assumption that the PTAB's decision invalidating claim 1 of the '442 patent must automatically apply with equal force to this Court's determination of the validity of claim 11 of the '442 patent. EMC's motion amounts to an argument that collateral estoppel can do all (or nearly all) the work of deciding this motion. But

collateral estoppel applies only in specific, limited circumstances, where the identical issue was fully and fairly litigated.  Here, the PTAB did not decide any issue identical to the ones raised by EMC's motion.  First, and most obvious, the PTAB did not consider claim 11.  That alone should preclude collateral estoppel.  But even for the claims the PTAB did consider, the significantly lower standard of proof for IPR proceedings means that the PTAB did not decide, and could not have decided, the relevant inquiry here: whether EMC established by *clear and convincing evidence* that claim 11 of the '442 patent is invalid.  Because the PTAB did not decide any issue identical to those before this Court, collateral estoppel cannot apply, and the motion for summary judgment must rise or fall on the sparse evidence submitted by EMC.  That evidence fails to establish that there is no material disputed issue of fact; on the contrary, there are significant disputed fact issues that preclude summary judgment, including the central issue of whether Reschke teaches or suggests all of the elements of claim 11 under the clear and convincing standard.

### A.    Collateral Estoppel Does Not Apply.

### 1.    Under 35 U.S.C. § 282, Each Claim Must Be Evaluated Independently

It is well established in both case law and statute that courts must evaluate each claim of a patent separately.  35 U.S.C. § 282 ("Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim."); *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1267 (Fed. Cir. 1985) ("[T]he scope of each individual claim must be examined on its own merits, apart from that of other claims, even in the same patent.").

While some courts have applied collateral estoppel to claims not identical but related to invalidated claims, courts do so only when related claims present "identical issues of patentability."  *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1377 (Fed. Cir. 2018).  In order for the Court to grant EMC's motion for summary judgment, the Court would have to decide that there is no disputed material fact, but it is a question of disputed fact "whether the differences

between the unadjudicated patent claims and the adjudicated claims materially alter the question of validity." *Purdue Pharma L.P. v. Mylar Pharm. Inc.*, 2017 WL 784989, at *8 (D. Del. 2017).

In conflating claims 1 and 11, EMC ignores the statutory presumption of patent validity. 35 U.S.C. § 282. Presuming the validity of an issued patent requires the presumption that each claim of that patent is valid. In other words, Section 282 necessarily requires a presumption that each claim of an issued patent claims new and distinct patentable subject matter not disclosed by the patent's other claims. The PTO evidently (and properly) reached the conclusion that claim 11 contained subject matter that was sufficiently distinct from claim 1 to merit patentability as a separate claim; that decision is entitled to a presumption of validity. EMC turns that presumption on its head, inviting the Court to presume that because one claim was invalidated, all claims that depend from it must be invalid as well. *See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1356 (Fed. Cir. 2001) ("Because dependent claims contain additional limitations, they cannot be presumed to be invalid as obvious just because the independent claims from which they depend have properly been so found.").

IV has submitted an expert declaration by Dr. Richard Wesel, who explains that Reschke does not teach or suggest the invention of claim 11 of the '442 patent. Multiple elements of claim 11 are simply not found in Reschke. For example, Dr. Wesel explains that the "processing units" described in Reschke cannot be conflated with the microprocessors required by claim 11 of the '442 patent. Wesel Decl. ¶¶ 58-59. Furthermore, Reschke does not teach or suggest the connection of microprocessors and memories to a switch fabric configured to switch packets. *Id.* ¶ 58. Dr. Wesel reaches the conclusion that a POSITA would not find claim 11 obvious in light of Reschke, and there is nothing about the PTAB's decision regarding claim 1 that dictates that claim 11 must be found obvious by this Court.

### 2.    The PTAB's Lower Standard of Proof Makes Collateral Estoppel Inapplicable Here

In *inter partes* review, the PTAB requires petitioners to establish invalidity by a preponderance of the evidence—a standard of proof that is "substantially lower than in a civil

case," where defendants attacking a patent's validity must establish invalidity by clear and convincing evidence. *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1364 (Fed. Cir. 2012); 35 U.S.C. § 316(e).  Similarly, in *inter partes* review, there is no presumption of validity, as there is in district court.  *Id.*  Nonetheless, EMC asks the Court to import the PTAB decision made under a lower standard of proof and translate it into an automatic victory under the far more stringent standards in this District Court.

Black letter law rejects EMC's theory of collateral estoppel.  It is universally recognized that shifts in the standard of proof defeat issue preclusion, or collateral estoppel.  18 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4422 (3d ed. 1998) ("[A] party who has carried the burden of establishing an issue by a preponderance of the evidence is not entitled to assert preclusion in a later action that requires proof of the same issue by a higher standard."); Restatement (Second) of Judgments § 28 (Am. Law. Inst. 1982) (issue preclusion does not apply where a party seeking preclusion "has a significantly heavier burden than he had in the first action" because to apply issue preclusion "would be to hold, in effect, that the losing party in the first action would also have lost had a significantly different burden [been] imposed").  For example, it is universally acknowledged that the difference in standards of proof in civil and criminal proceedings is dispositive of the collateral estoppel question.  *See, e.g.*, *United States v. Egan Marine Corp.*, 843 F.3d 674, 676 (7th Cir. 2016) (holding that where the government failed to prove a fact in a civil case, it was precluded from asserting the same fact in a criminal case, because "[i]f the United States cannot prove a factual claim on the preponderance standard, it cannot logically show the same thing beyond a reasonable doubt.").[2]

As a further illustration, the Federal Circuit has repeatedly confirmed that a district or appellate court's finding of no patent invalidity is not binding in a subsequent PTAB proceeding

---

[2] In *Egan*, estoppel applied because a fact was <u>not</u> established at a lower standard of proof. Where a fact is established at the lower standard, it cannot establish the same fact by estoppel at a higher standard of proof.  *See Cobb v. Pozzi*, 363 F.3d 89, 114 (2d Cir. 2004) ("A party's success in an earlier proceeding where it faced a lower burden of proof does not mean that, against a higher burden of proof in a subsequent proceeding, that party would achieve the same result.").

OPPOSITION TO EMC CORPORATION'S MOTION FOR SUMMARY JUDGMENT

because a defendant challenging a patent's validity may succeed under the PTAB's lower preponderance of the evidence standard even if it had failed under a court's clear and convincing evidence standard.  In *Novartis AG v. Noven Pharm. Inc.*, 853 F.3d 1289, 1293 (Fed. Cir. 2017), Novartis argued that two final written decisions by the PTAB invalidating Novartis's patents were erroneous because the PTAB found the challenged claims obvious, despite prior rulings from the District of Delaware[3] and the Federal Circuit[4] that the claims were nonobvious.  The Federal Circuit held that the PTAB's decision was proper because the PTAB applied a preponderance of the evidence standard rather than a clear and convincing evidence standard, "meaning that the PTAB properly may reach a different conclusion based on the same evidence." 853 F.3d at 1294.

Similarly, in *In re Baxter Intern., Inc.*, 678 F.3d 1357 (Fed. Cir. 2012), a district court found that a patent challenger failed as a matter of law to show that a patent was obvious over prior art, a decision that was affirmed by the Federal Circuit in *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299 (Fed. Cir. 2009).  In parallel with that litigation, the PTO reexamined the asserted patent and ultimately found it obvious, a decision upheld by the PTAB even after it considered the Federal Circuit's holding in the parallel litigation.  The PTAB reasoned that although the asserted claims "were not proven invalid in court, a lower standard of proof and the broadest reasonable interpretation standard of claim construction apply at the PTO and therefore the agency is not bound by the court's determination." 678 F.3d at 1360–61.  Even the PTAB itself has recognized that the differences in standards of proof between PTAB and district court proceedings may result in denial of issue preclusion because "the differing standards makes it even easier to invalidate claims in the Office." *Ex Parte Ditzik*, 14/169,232, 2018 WL 3409672, at *4 (P.T.A.B. July 10, 2018).  These cases represent the inverse of the instant case, in that they hold that a failure to meet a higher standard does not preclude relitigating the same issue under a lower standard.  However, the same logic must hold true here: meeting a lower standard of proof does

---

[3] *Novartis Pharm. Corp. v. Noven Pharm., Inc.*, 125 F. Supp. 3d 474 (D. Del. 2015).
[4] *Novartis Pharm. Corp. v. Watson Labs., Inc.*, 611 Fed. App'x 988 (Fed. Cir. 2015).

not prove that the party could satisfy a higher standard of proof in a subsequent proceeding. *Cobb*, 363 F.3d at 114.

The Federal Circuit holds that collateral estoppel applies only where "the issue previously adjudicated is identical with that now presented." *Kroeger v. U.S. Postal Serv.*, 865 F.2d 235, 239 (Fed. Cir. 1988). The difference in standards of proof between the PTAB and the district courts means that the issues decided cannot be identical to those before the Court. The PTAB decided that EMC had shown by a preponderance of the evidence that claim 1 of the '442 patent was invalid for obviousness (using a broader claim construction that should not be adopted by this Court). The issue here—one not decided by the PTAB—is whether EMC has shown by *clear and convincing evidence*, under a proper claim construction, that claim *11* of the '442 patent is invalid.

### 3. The PTAB Applies a Broader Claim Construction Standard

In addition to its lower standard of proof, the PTAB also applies a broader claim construction standard. District courts assign to claim terms "the meaning that [a] term would have to a person of ordinary skill in the art at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). By contrast, the PTAB applies the "broadest reasonable interpretation" of claim language. *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2145 (2016). By design, the PTAB's broader standard "increases the possibility that the examiner will find the claim too broad (and deny it)." *Id.*

When the PTAB interpreted the language of the '442 patent, the PTAB applied a standard that deliberately attempts to sweep in the broadest possible scope of the claimed invention. Applying a claim construction determined under that standard would make it significantly easier to show that a prior art reference disclosed certain claim elements or rendered claims obvious. Here, the PTAB applied a definition of the term "packet" that is far broader than the meaning of that term as it is used in the '442 patent and broader than it should be construed by this Court under the Federal Circuit's applicable claim construction principles. As explained in greater detail below, under the proper claim construction, Reschke does not disclose transmissions of "packets" nor the concept of a switch fabric configured to switch packets.

### 4.     The Cases EMC Cites Do Not Require This Court to Apply Collateral Estoppel

EMC cites to various cases as authority for its claim that collateral estoppel precludes IV from asserting claim 11 of the '442 patent, but none of these cases are on point.  In *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333 (Fed. Cir. 2013), the Federal Circuit affirmed the application of collateral estoppel concerning similar claims of different patents being litigated in two different *district courts*.  *Id.* at 1342-43.  Those two district court decisions would have applied the same burden of proof and the same claim construction standards, whereas here, the PTAB applied a lower burden of proof and a broader claim construction standard.  Similarly, in *Soverain Software LLC v. Victoria's Secret Direct Brand Management, LLC*, the Federal Circuit applied collateral estoppel to preclude further enforcement of patent claims (the same claims) that the Federal Circuit itself—not the PTAB—had invalidated.  *Soverain Software LLC v. Victoria's Secret Direct Brand Management, LLC*, 778 F.3d at 1314-15 (Fed. Cir. 2015).

The Federal Circuit's recent decision in *XY, LLC v. Trans Ova Genetics, L.C.* also does not support EMC's position.  That case applied collateral estoppel from an IPR decision to an action in district court to enforce *exactly the same claims*.  *XY, LLC v. Trans Ova Genetics, L.C.,* 890 F.3d 1282, 1294 (Fed. Cir. 2018).  Here, by contrast, claim 11 of the '442 patent was never addressed by the Board, but EMC nevertheless asks the Court to convert a decision invalidating claim 1 into a decision invalidating claim 11.

Notably, EMC does not—and cannot—cite to a single authority holding that an IPR decision on one claim automatically has an issue-preclusive effect on a separate dependent claim. Collateral estoppel can only apply where identical issues were decided, and here, there is no authority for EMC's suggestion that the invalidation of an independent claim by the PTAB presents issues identical to those raised in a validity challenge to a dependent claim, under the stricter district court standard of clear and convincing evidence.

OPPOSITION TO EMC CORPORATION'S MOTION FOR SUMMARY JUDGMENT

**B.      EMC Failed to Present Evidence that Claim 11 Is Invalid**

EMC has the burden of showing, by clear and convincing evidence, that claim 11 of the '442 patent is invalid.  "[T]hat burden is constant and never changes."  *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).  Having failed to carry its burden, EMC cannot be granted summary judgment.

EMC submits *no* clear and convincing admissible evidence that shows that all elements of claim 11 are present in Reschke.  Notably, EMC's motion does not even clearly state if it is arguing that claim 11 is invalid by anticipation under 35 U.S.C. § 102, or obviousness under 35 U.S.C. § 103.  Presumably, given that the PTAB rejected EMC's anticipation challenge to claim 1 of the '442 patent, EMC is relying on Section 103 obviousness, but its motion does little to clarify this. EMC submitted no declaration from its expert witness that claim 11 is obvious or that all elements of claim 11 are taught or suggested by the Reschke reference.  Its only submissions are the PTAB's finding that a different claim was invalid, and a brief declaration from Dr. Douglas Clark making the cursory statement that Reschke allegedly teaches the microprocessors and memory device described in claim 11.  As explained previously, the PTAB decision not only addresses a different claim; it was reached under a different standard of proof and applied a broader standard for claim construction that should not be applied by this Court.  The PTAB did not resolve the parties' current disputes over claim construction under the applicable standard, a significant consideration given the central importance of claim construction briefing and argument to district court patent proceedings.

Furthermore, Dr. Clark's declaration is entirely devoid of any factual evidence that Reschke teaches the use of microprocessors and memories connected to a switch fabric configured to switch data packets.  Dr. Clark's declaration is so threadbare that it devotes significantly more space to reciting Dr. Clark's credentials than to setting forth opinions relevant to this motion.  He makes only a blanket, unsupported statement that the "processor units" of Reschke are microprocessors.  Clark Decl. ¶ 22.  This not only fails to satisfy EMC's burden of clear and convincing evidence; it also fails even to satisfy the disclosure requirements of Federal Rule of

Civil Procedure 26, which requires expert witnesses to disclose their opinions as well as the basis and reasons for them. A conclusory statement like that offered by EMC is not sufficient evidence to carry EMC's clear and convincing burden of proof. Indeed, courts routinely hold that conclusory declarations from experts are not sufficient to support summary judgment. *See Ambit Corp. v. Delta Airlines, Inc.*, 707 F. Supp. 2d 74, 79 (D. Mass. 2010) ("General and conclusory testimony 'does not suffice as substantial evidence of invalidity'") (quoting *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004)). Further, Dr. Wesel explains that Reschke does *not* describe the microprocessors required by claim 11 and that there is nothing in Reschke to demonstrate that the "processor units" are, in fact microprocessors, as opposed to some other kind of system. Wesel Decl. ¶¶ 58-59. This disagreement between Drs. Clark and Wesel is, in itself, sufficient to create a material dispute of fact to preclude summary judgment.

Furthermore, EMC makes no effort whatsoever to address the factors prescribed for an obviousness analysis in *Graham v. John Deere Co.*, 383 US 1 (1966). These "underlying factual inquiries" include "(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) any secondary considerations of non-obviousness." *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1371 (Fed. Cir. 2018). EMC's failure even to attempt to address these factors, much less to present clear and convincing evidence regarding them, only serves to illustrate the fact that EMC is pinning its hopes on the possibility that the Court will allow it to use the PTAB decision as an unearned shortcut to invalidating claim 11.

### C.   Disputed Material Facts Preclude Summary Judgment

As set forth in detail in Dr. Wesel's declaration, Reschke does not disclose the patented invention or render it obvious. First, Reschke is aimed at solving a problem that differs significantly from the problem addressed by the '442 patent. Wesel ¶ 41. The '442 patent solves the "bottleneck" problem that arises when a traditional bus is used to connect multiple processors and memories. *Id.* By contrast, Reschke attempts to speed up the recognition of errors in a

traditional routing system by inserting parity bits into data, allowing the receiving component to detect errors by reading the parity bit and then to send the correction request itself. *Id.*

Second, Reschke does not include key elements that are central to the patented invention. Reschke does not include a switch fabric configured to switch packets. Instead, Reschke relies on a conventional router used for circuit switching – a very different technique from packet switching. *Id.* ¶ 42. Contrary to EMC's representation, Reschke does not describe the switch fabric configured to switch packets required by claim 11. *Id.* ¶ 43. Instead, Reschke describes a system data switch that is configured as a conventional router, designed to transfer data between a limited number of processors and memories. *Id.* ¶ 46. Reschke also does not employ packetized data, choosing the different approach of transferring variably sized blocks of data (without the disassembly and reassembly of packetization) using circuit switching. *Id.* ¶¶ 50-51. Packets, by definition, contain at least data and control information, such as a destination address. *Id.* ¶ 50. But Reschke does not use packetized data. The blocks of transfer data described in Reschke are transmitted separately from "control words," which are routed along separate "control signal paths" to determine the single circuit pathway that the entire transfer block uses. *Id.* ¶ 52. This solution is entirely different than the packet switching of the '442 patent claims. *Id.*

In view of the foregoing facts, Dr. Wesel reaches the conclusion that, in his expert opinion, a POSITA would not find claim 11 of the '442 patent obvious in light of Reschke. Reschke does not teach or suggest a switch fabric configured to switch packets, as required by claim 11, and nothing about Reschke would motivate a POSITA to substitute a switch fabric configured to switch packets for the system data switch (conventional router) described by Reschke. *Id.* ¶ 56. Reschke does not suggest that its system creates bottleneck problems; thus, Reschke does not provide any motivation to substitute a switch fabric configured to switch packets for the router described in the reference. Nor does Reschke teach or suggest the combination of multiple microprocessors and memories connected to a switch fabric configured to switch packets, as required by claim 11. *Id.* ¶ 58. Reschke does not describe microprocessors, but describes only "processor units." *Id.* ¶ 59. EMC's expert, Dr. Clark, asserts in conclusory fashion and without explanation that processor

units are microprocessors.  But EMC offers no *evidence* that the processor units described in Reschke either are microprocessors connected to a switch fabric configured to switch packets, or that the processor units of Reschke make the microprocessors of claim 11 obvious.  *Id.* ¶ 59.

Dr. Wesel's declaration also addresses a secondary indicator of non-obviousness: the commercial success of the accused products using the claimed invention.  *Id.* ¶¶ 62-65.  As Dr. Wesel explains, EMC's own product description guide for the accused Symmetrix VMAX describes features of claim 11.  For example, the guide explains that the RapidIO interconnect and Ethernet fabrics used to connect and manage VMAX engines are both configured to switch packets containing data: "The Virtual Matrix Interconnect utilizes the industry-standard, *packet-switched* serial RapidIO architecture as the communication mechanism among the directors."  *Id.* ¶ 63; Ledahl Decl. Ex. D, IV_EMC_000786, at 12 (emphasis added).  EMC's guide also shows that the Symmetrix VMAX contains a switch fabric configured to switch packets containing data.  The switch fabric is described as a "Virtual Matrix Architecture" that provides "two active-active, non-blocking, serial RapidIO® private networks as the inter-node Virtual Matrix Interconnect," extending "onto the Symmetrix VMAX engines, encompassing the memory and the I/O paths." Wesel Decl. ¶ 64; Ledahl Decl. Ex. D, at 12.  RapidIO is itself a "fabric" that supports "reads and writes to global memory and director-to-director messaging within the system with an aggregate interconnect *fabric* bandwidth of 80 GB/s." Wesel Decl. ¶ 64; Ledahl Decl. Ex. D, at 12. (emphasis added).  EMC's public documents also show that it connects microprocessors to this switch fabric, specifically referring to the use of dual Quad-cord 2.33 GHz Intel Xeon processors, which are well-known microprocessors.  Wesel Decl. ¶ 64; Ledahl Decl., Ex. D, at 11.

As Dr. Wesel explains, that EMC incorporated the claimed invention into its products and touts those features to its customers indicates that the invention has contributed to EMC's commercial success, which in turn indicates that the claimed invention is non-obvious.  *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983) ("[E]vidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness.").  The success of an infringer's own products can show commercial

success. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000) ("Our case law provides that the success of an infringing product is considered to be evidence of the commercial success of the claimed invention."). While IV expects that ongoing discovery will produce further evidence of the claimed invention's commercial success, the fact that EMC uses and promotes the claimed invention creates a material issue of disputed fact on the question of non-obviousness.

In short, Reschke uses different technology to address a different problem, and does not disclose significant elements recited in claim 11 of the '442 patent, including claim 11's microprocessors and memory devices connected to a switch fabric configured to switch packets. EMC's motion and supporting documents fall far short of providing the required clear and convincing evidence that claim 11 is obvious. Further, EMC offers no testimony or opinion from any witness that claim 11, as a whole, is obvious in light of Reschke or any other reference. Dr. Clark's brief declaration never offers that opinion. That alone should defeat EMC's motion. Here, however, IV has also submitted Dr. Wesel's considered opinion that claim 11 is *not* obvious over Reschke. Thus, even if EMC had submitted sufficient evidence to carry its *prima facie* burden, the evidence submitted by IV, including evidence of the difference between Reschke and claim 11 of the '442 patent, raises genuine issues of material fact precluding summary judgment.

## V.     CONCLUSION

EMC fails to proffer admissible evidence that claim 11 of the asserted '442 patent is obvious in light of the Reschke reference. EMC relies entirely on a theory of collateral estoppel for factual findings as to most of the elements of claim 11. Collateral estoppel is entirely unavailable because there is no prior adjudication of the identical issue. This alone warrants denial of EMC's motion. EMC's proffered evidence as to the further elements of claim 11 is also lacking as it submits only a conclusory and insufficient declaration from its expert as to those additional elements, without any evidence or testimony of any kind that the invention of claim 11 as a whole is obvious.

Date: October 12, 2018

Russ August & Kabat

*/s/ Brian D. Ledahl*_____
Brian D. Ledahl (SBN 186579)
*bledahl@raklaw.com*
Marc A. Fenster (SBN 181067)
*mfenster@raklaw.com*
Adam S. Hoffman (SBN 218740)
*ahoffman@raklaw.com*
Theresa M. Troupson (SBN 301215)
*ttroupson@raklaw.com*
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

David S. Godkin (SBN 196530)
*godkin@birnbaumgodkin.com*
James E. Kruzer (SBN 670827)
*kruzer@birnbaumgodkin.com*
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA 02210
Telephone: (617) 307-6100
Facsimile: (617) 307-6101

*Attorneys for Plaintiffs*
INTELLECTUAL VENTURES I, LLC and
INTELLECTUAL VENTURES II, LLC,

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on October 12, 2018, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).   Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.


_____ /s/ Brian D. Ledahl_____