# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTELLECTUAL VENTURES I, LLC; INTELLECTUAL VENTURES II, LLC,<br><br>      Plaintiffs,<br><br>  v.<br><br>LENOVO GROUP LTD.; LENOVO (UNITED STATES) INC.; LENOVOEMC PRODUCTS USA, LLC; and EMC CORPORATION,<br><br>      Defendants. | C.A. No. 1:16-cv-10860-PBS<br>LEAD CASE |
| INTELLECTUAL VENTURES I, LLC; INTELLECTUAL VENTURES II, LLC,<br><br>      Plaintiffs,<br><br>  v.<br><br>NETAPP, INC.,<br><br>      Defendant. | C.A. No. 1:16-cv-10868-PBS |

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE'S ORDER (DKT. #223) GRANTING MOTION FOR ENTRY OF SUPPLEMENT TO THE PROTECTIVE ORDER AS TO DEFENDANT EMC CORPORATION (DKT. #165)**

**TABLE OF CONTENTS**

I.    THERE IS NO GOOD CAUSE TO SUPPORT AN ACQUISITION BAR............................1

      A.    One of the Key Facts on Which the Order Relies Is Not True—IV Ceased Its Patent Acquisition Activities in 2017 .................................................................................1

      B.    The Other Facts on Which the Order Is Based Do Not Support a Finding of Good Cause ...............................................................................................................3

II.   THE ACQUISITION BAR IS OVERBROAD AND UNDULY PREJUDICIAL ...............8

III.  CONCLUSION...........................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**

*American GNC Corp. v. LG Elecs. Inc.*,
  Case No. 3:17-CV-01090-BAS-BLM (S.D. Cal. Oct. 23, 2017) ........................................ 7, 10

*In re Deutsche Bank Tr. Co. Americas*,
  605 F.3d 1373 (Fed. Cir. 2010) ..................................................................................... passim

*Nazomi Commc'ns, Inc. v. Arm Holdings PLC*,
  No. C 02-02521-JF, 2002 WL 32831822 (N.D. Cal. Oct. 11, 2002)............................ 3, 4, 5, 9

**Rules**

Fed. R. Civ. P. 26(c) ............................................................................................................... 1

Pursuant to the Court's February 27, 2019 Order (Dkt. #229), Plaintiffs Intellectual Ventures I, LLC and Intellectual Ventures II, LLC (collectively, "IV") hereby move for reconsideration of the Magistrate Judge's January 25, 2019 Order (Dkt. #223) (hereafter, the "Order") granting Defendants' Renewed Motion for Entry of Supplement to the Protective Order (Dkt. #165) as to Defendant EMC Corp. ("EMC").

On February 11, 2019, IV filed objections (Dkt. #226) to the Magistrate's Order explaining, among other things, that one of the key facts upon which the Order is based is not true: IV ceased its patent acquisition activities two years ago in 2017. While the District Judge declined IV's request to vacate the Order, the District Judge specifically directed IV to file a motion for reconsideration "if IV has evidence that the [Magistrate Judge] relied on facts which are no longer true (i.e. the allegation that IV is no longer acquiring patents)." Dkt. # 229. IV indeed has such evidence, which was presented in its briefing and at the motion hearing. To the extent that the Court had any doubt as to whether IV has, in fact, ceased its patent acquisition activities, IV also submits a declaration (Ex. A) confirming that it is no longer in the business of acquiring patents.

In light of this evidence directly refuting a key factual basis of the Order, IV respectfully requests that the Court reconsider and deny Defendants' Motion for Entry of Supplement to the Protective Order in its entirety, including as to EMC.

## I.     THERE IS NO GOOD CAUSE TO SUPPORT AN ACQUISITION BAR

### A.     One of the Key Facts on Which the Order Relies Is Not True—IV Ceased Its Patent Acquisition Activities in 2017

"A party seeking a protective order carries the burden of showing good cause for its issuance." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373 (Fed. Cir. 2010) (citing Fed. R. Civ. P. 26(c). While the Order correctly recognizes that pursuant to the Federal Circuit's decision in *Deutsche Bank*, EMC was required make a special showing to justify entry of the requested

1

acquisition bar, the Order does not meaningfully apply this standard to the facts of this case. For example, the Order does not account for the fact that IV is no longer in the patent acquisition business.

At minimum, EMC had the burden to demonstrate, based on facts specific to this case, that there is "unacceptable risk of inadvertent disclosure." *Deutsche Bank*, 605 F.3d at 1379.[1] The only facts upon which the Court based its finding of such risk are 1) "plaintiffs are in the business of acquiring patents and patent applications in order to monetize them"; 2) "plaintiff's counsel specializes in asserting these patents on behalf of IV and other clients"; and 3) "[t]hrough the process of discovery, EMC will be obligated to turn over confidential technical documents to the plaintiffs." Order at 6. The first of these three findings is not even true. The second is essentially a general description of lawyers (as EMC points to no evidence that IV's counsel in this case routinely represents IV, or even currently represents IV in any other cases), and the third is also a description of all patent infringement cases. These facts fall far short of EMC's burden to demonstrate good cause.

As explained in IV's briefing and at the hearing, and as further confirmed in the declaration of James Weisfield  (Ex. A), IV ceased patent acquisition two years ago in 2017.[2] All of IV's patent aggregation funds are closed, and IV has no other active funds for patent acquisition. *See* Ex. A ¶¶ 2–3; Opp. at 4 & n.3; Hearing Tr. at 12:16–13:18. The Order does not even mention, let

---

[1] IV disagrees with the Court's adoption of the minority view, which shifts the burden to the nonmovant to seek exemptions from the acquisition bar on a counsel-by-counsel basis. *See* Order at 5. Regardless, even under this view, EMC has failed to meet its burden to show an unacceptable risk of inadvertent disclosure.

[2] *See also*  https://www.iam-market.com/blog-entry/top-buyer-intellectual-ventures-announces-cessation-patent-purchasing-activities-leaving.

alone consider, these facts. Given that a key factual basis underlying the Order is simply not true, IV submits that the Order should be vacated and the motion denied in its entirety. *See* Dkt. #229.

To the extent that the Court requires a guarantee that IV would "not ever again in the future" engage in patent acquisition (Hearing Tr. at 13:3, 16:10–11), there is no authority to support such an onerous standard. If that were the test, then every case would be subject to an acquisition bar, as it is theoretically possible for any entity to become involved in patent acquisition at some point in the future. Any argument that IV is more likely to engage in patent acquisition in the future simply because it has done so in the past is speculative at best. IV has presented affirmative evidence that it has not engaged in patent acquisition activities since 2017, and that it has no plans to engage in such activities in the future (and certainly not in the next two years). This evidence directly refutes the Court's finding that "plaintiffs are in the business of acquiring patents and patent applications in order to monetize them." Order at 6. The Order is thus premised on false facts and should be vacated.

### B. The Other Facts on Which the Order Is Based Do Not Support a Finding of Good Cause

The remaining facts on which the Order is based (that IV is represented by patent counsel, and that EMC will be producing confidential technical documents) fall far short of the good cause required for an acquisition bar. Indeed, the same could be said of virtually any patent case.

First, the mere fact that IV's counsel, Russ August & Kabat ("RAK"), specializes in plaintiff's side patent litigation—i.e., patent *enforcement*—does not somehow establish that RAK's attorneys are competitive decisionmakers for IV, or any other client for that matter. *See Nazomi Commc'ns, Inc. v. Arm Holdings PLC*, No. C 02-02521-JF, 2002 WL 32831822, at *3 (N.D. Cal. Oct. 11, 2002) (denying defendants' request for patent prosecution bar and "license negotiation bar"; finding that the lawyers involved in the litigation "cannot be considered

competitive decisionmakers for [plaintiff] based on their general patent prosecution practice," and that the firm's "general licensing practice does not make it some kind of free floating competitive decisionmaker").[3] EMC's argument goes too far, as it would be applicable to all lawyers in all cases since any lawyer can represent a party in patent litigation.  EMC makes no showing, for example that the RAK firm has some kind of special relationship with IV involving patent acquisition and assertion, or even that RAK is IV's exclusive, or even primary counsel for litigation matters. It does not even identify a single case, aside from the instant cases, in which RAK represents IV.

The premise of EMC's argument is that at some point in the future, one of RAK's clients (notably, EMC's requested bar is not limited to just IV) might seek advice about acquiring a patent in the same field as the patents-in-suit, and, pursuant to RAK's advice, purchase the patent and assert it against EMC. This hypothetical risk is not only entirely speculative, but is also exceedingly unlikely given that the vast majority of RAK's patent practice is in the enforcement context, *not* acquisition.[4] And even in the unlikely event this were to happen, there still would be no risk, as the operative protective order provides extensive and adequate protections prohibiting the use of EMC's confidential information for such purposes. *See* Dkt. #100 at 22 (protected

---

[3] EMC's attempt to distinguish *Nazomi* on the sole basis that it was decided before *Deutsche Bank* fails. The *Nazomi* court's analysis is entirely consistent with the Federal Circuit's analysis in *Deutsche Bank* rejecting the notion that all patent prosecution activities necessarily involve the type of competitive decision-making, which would justify the need for special protections. *See Deutsche Bank*, 605 F.3d at 1379–80 ("Because patent prosecution is not a one-dimensional endeavor and can encompass a range of activities, it is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking. . . . ***The facts, not the category must inform the result. Our holding in U.S. Steel dictates that each case should be decided based on the specific facts involved therein***." (emphasis added)).

[4] *See* Hearing Tr. at 27:1–4 (explaining that "[i]t's possible that on occasion we [RAK] are consulted about those matters [relating to patent acquisition], as a general matter, most of our practice is in the patent enforcement context, not acquisition").

material designated under the protective order may be used "only for purposes of litigating this case, and shall not be used directly or indirectly for any other purpose whatsoever"); *Nazomi*, 2002 WL 32831822, at *3 ("[T]he general rule is that attorneys operating under a protective order will properly handle confidential information."). While at the hearing, the Magistrate Judge correctly recognized that "case law tells us . . . we don't have a per se rule . . . that just because somebody is active in the industry we're going to implement a bar" (Hearing Tr. at 6:15–18), the Order nonetheless imposes an acquisition bar for this very reason.

EMC argues that because RAK's practice does not typically involve patent acquisition activities, then it will not be prejudiced by the acquisition bar provisions. This argument fundamentally misunderstands EMC's burden. EMC is required to demonstrate, with specific facts, that the attorneys' activities create an "unacceptable risk of inadvertent disclosure." *Deutsche Bank*, 605 F.3d at 1379. EMC apparently does not dispute that IV is no longer involved in patent acquisition, and that RAK's attorneys do not typically advise on patent acquisition matters. Thus, EMC also cannot legitimately dispute that there is little, if any risk—and certainly not an unacceptable risk—of inadvertent disclosure. And even if patent acquisition were a regular part of RAK's practice—which it is not—this still would not support a finding of good cause. In *Deutsche Bank*, the Federal Circuit rejected the notion that all patent prosecution activities give rise to the need for a prosecution bar. Instead, the Federal Circuit requires a specific showing based on the facts of the case. *Deutsche Bank*, 605 F.3d at 1380. EMC's arguments based on RAK's general patent *litigation* practice are even more egregious, as these activities are not even tied to the proposed *acquisition* bar.

Generalizations regarding the "difficult[y] for the human mind to compartmentalize and selectively suppress information once learned" (Order at 6) also do not satisfy EMC's burden to

show, with specific facts pertinent to this case, that RAK's "activities, association, and relationship with [IV]" would lead to an increased likelihood of inadvertent disclosure. *Deutsche Bank*, 605 F.3d at 1378. Moreover, the Order did not give any consideration to the differences between patent prosecution bars such as the one at issue in *Deutsche Bank* and the acquisition bar at issue in this case. As explained in IV's opposition and objections to the Order, while the former involves the drafting of entire new patent claims, acquisition simply involves the purchase of patents that already exist. There is no risk of putting EMC at a competitive disadvantage because no new claims are being created.

To the extent that a client might seek advice on whether certain pre-existing patent claims would read onto EMC's products, the existing protective order (without the acquisition bar provisions) already prohibits the use of EMC's confidential information in this context. To the extent that EMC argues that a RAK attorney could subconsciously rely on EMC's information in providing general acquisition advice to other clients, EMC fails to explain how this would somehow put EMC at a competitive disadvantage. Nor can it, as this type of generalized, hypothetical "risk" of an attorney subconsciously relying on confidential information in advising other clients on other, unrelated matters is present in literally every case—not just patent cases. In other words, there is no *special risk* of inadvertent disclosure or use. The fact that EMC's motion fails to point to a single instance in which either RAK or IV has engaged in any sort of improper conduct regarding patent acquisition further underscores that the acquisition bar is unnecessary.

Finally, the mere fact that EMC will be producing confidential technical documents in discovery also does not support a finding that there is unacceptable risk of inadvertent disclosure.[5]

---

[5] The Order correctly concludes that EMC's financial information should not be subject to the acquisition bar. Order at 6–7.

RAK is not aware of a single patent case it has been involved in that did not involve the production of confidential technical documents, including highly sensitive proprietary information such as source code. In nearly all of those cases, the defendants did not even request an acquisition bar because the operative protective orders provided sufficient protections for the handling of even their most sensitive information. EMC failed to make any showing that this case presents unique risks beyond the norm that warrant the special protections it seeks. For example, EMC did not identify a single document or category of documents that would have any particular significance in the context of patent acquisition. *See Deutsche Bank*, 605 F.3d at 1381 (party seeking prosecution bar has burden of establishing that the protected information is "relevant to the preparation and prosecution of patent applications before the PTO"); *American GNC Corp. v. LG Elecs. Inc.*, Case No. 3:17-CV-01090-BAS-BLM, slip op. at 6 (S.D. Cal. Oct. 23, 2017)[6] (denying defendants' proposed prosecution bar because it was "overly-broad and could encompass significant amounts and types of information and documents that, while sensitive, are not relevant to patent applications, especially future applications," and denying proposed acquisition bar for similar reasons).

At best, the declarations submitted by EMC show that it will be producing non-public information. This is not unique to this case and cannot be good cause for the imposition of an acquisition bar. Indeed, at the motion hearing, counsel for NetApp and Lenovo—who did not submit any declarations in support of the requested acquisition bar—*admitted* that an acquisition bar is unnecessary in this case. Hearing Tr. 33:12–17 ("[W]hen we look at the particular products accused in the documents we have, our clients [NetApp and Lenovo] don't think it's likely they

---

[6] Available at Dkt. #174-3.

are going to need the acquisition bar. They are not going to likely need to designate documents for the acquisition bar and so we didn't see a need to submit affidavits."). Nor does the fact that acquisition bars have been entered in other cases support a finding that there is good cause for an acquisition bar in *this case*.

In sum, EMC failed to carry its burden to show that under the particular facts of this case, there is an unacceptable risk of inadvertent disclosure. Therefore, there is no good cause to support the requested acquisition bar.

## II.   THE ACQUISITION BAR IS OVERBROAD AND UNDULY PREJUDICIAL

Even assuming that the facts of this case demonstrate an unacceptable risk of inadvertent disclosure—which they do not—this risk must be "balance[d] . . . against the potential harm to the party against whom the bar is sought." *Deutsche Bank*, 605 F.3d at 1380. In this case, because IV is no longer in the business of acquiring patents, the primary target of EMC's proposed acquisition bar is IV's outside counsel. The bar essentially serves to punish RAK and restrict its practice, simply because RAK specializes in representing patent owners in enforcing their constitutionally protected intellectual property rights. EMC's counsel's statements at the hearing all but confirm that this is precisely the purpose of the proposed bar. *See* Hearing Tr. 5:11–2 ("The combination of IV coupled with its counsel, RAK, in this case warrants the acquisition bar."). As explained in IV's opposition brief and at the hearing, if EMC were truly concerned that the protective order does not sufficiently protect against inadvertent disclosure of its confidential information, then the acquisition bar should mutually apply to EMC's counsel—not just RAK. Under EMC's reasoning, it is equally likely that its own counsel could inadvertently rely on EMC's confidential information in advising other clients on patent acquisition. EMC apparently concedes this point, as it has failed to provide any response in any of the briefing related to its motion.

8

EMC's repeated assertion that the proposed acquisition bar is "narrowly tailored" is simply not true. The bar does not only restrict the type of work RAK can perform for IV—it restricts the type of work RAK can perform for *any client* for two years *after* this litigation concludes (which itself could take several years including appeals). The bar applies regardless of whether the client has anything to do with this case or any relation to IV or EMC, and without any showing that RAK is a competitive decision-maker for the client. *See Nazomi*, 2002 WL 32831822, at *3 (rejecting the notion that a law firm's general practices make it "some kind of free floating competitive decisionmaker"); *Deutsche Bank*, 605 F.3d at 1379 (with respect to a patent prosecution bar, "[t]he concern over inadvertent disclosure manifests itself in patent infringement cases when trial counsel also represent the **same client** in prosecuting patent applications before the PTO" (emphasis added)).

Moreover, the Order appears to allow EMC to broadly designate any "confidential technical document" as subject to the acquisition bar. Order at 7. EMC's briefing and statements at the hearing confirm that EMC intends to designate virtually any document that contains or relates to non-public technical information. When asked to identify specific examples of documents which would *not* be subject to the bar, EMC was only able to identify one "technical document that had no designation period because it was a document in the public's face." Hearing Tr. at 20:21–23. This overbroad approach is contrary to Federal Circuit precedent, which requires the party seeking the restriction to establish that the protected information is relevant to the barred activities—in this case, patent acquisition. The mere fact that documents may contain sensitive

confidential information is insufficient.[7] *See, e.g.*, *Deutsche Bank*, 605 F.3d at 1381; *American GNC*, slip op. at 6 (proposed prosecution bar overbroad because it "could encompass significant amounts and types of information and documents that, while sensitive, are not relevant to patent applications, especially future applications").

The over-designation of documents as subject to the acquisition bar will result in substantial prejudice to IV and its outside counsel. Over-designation will not simply restrict the ability to review the documents and use them in this litigation. It will also categorically prohibit any RAK attorney who accesses the documents from participating in activities completely unrelated to this litigation for several years. Given EMC's intention to designate all of its non-public technical documents and the severe implications of such over-designation, IV anticipates that there will be numerous disputes which will likely result in motion practice, wasting both the parties' and the Court's time and resources.

The mere fact that RAK does not regularly advise clients on patent acquisition does not mitigate this substantial prejudice. To the contrary, this fact simply reiterates that RAK's practice will be unnecessarily restricted despite EMC's failure to meet its burden to prove there is a need for such restrictions.

## III.   CONCLUSION

Because 1) the Order is based on facts which are not true and fails to consider evidence that IV ceased its patent acquisition activities in 2017; 2) EMC has failed to demonstrate an unacceptable risk of inadvertent disclosure; and 3) the potential harm to IV and its counsel caused

---

[7] Tellingly, while defendants NetApp and Lenovo will also be required to produce highly sensitive confidential technical documentation in discovery, both conceded that none of their documents would need the special protections of an acquisition bar. Hearing Tr. 33:12–17.

by the overbroad acquisition bar provisions far outweighs any purported minimal risk to EMC, the

Order should be vacated and the motion should be denied in its entirety.

Dated: March 29, 2019

/s/ Brian D. Ledahl_____

David S. Godkin (BBO #196530)
James E. Kruzer (BBO #670827)
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA 02210
Telephone: 617-307-6100

Brian D. Ledahl (CA SB No. 186579)
Theresa M. Troupson (CA SB No. 310215)
RUSS AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Telephone: 310-826-7474
Facsimile: 310-826-6991
bledahl@raklaw.com
ttroupson@raklaw.com

*Attorneys for Plaintiffs*
*Intellectual Ventures I, LLC*
*Intellectual Ventures II, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") on March 29, 2019.

/s/ *Brian D. Ledahl*_____
Brian D. Ledahl (*pro hac vice*)